**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

NORMAN H. GARLICK, # 321732,

        Petitioner,

v.                                            ACTION NO.
                                            2:06cv360

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S SECOND REPORT AND RECOMMENDATION

        This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends denying the petition for writ of habeas corpus.

## I. STATEMENT OF THE CASE

### A. Background

        On April 30, 2007, the undersigned United States Magistrate Judge entered a Report and Recommendation recommending that Norman H. Garlick's petition be denied in part and granted to the extent that it alleges a violation of his Fourteenth Amendment right to due process for the Virginia Department of Corrections' failure to grant him good conduct allowances for his first 252 days served

in city and regional jails before he was received in the state system.  After reviewing the respondent's and petitioner's objections to the Magistrate Judge's Report and Recommendation, as well as petitioner's response to respondent's objections, the United States District Judge remanded the matter to the Magistrate Judge for further proceedings.

By Order dated June 15, 2007, the Court directed the respondent to provide evidence demonstrating when and by what means or method Garlick's 126 days credit was factored into the computation of his projected release date.  Respondent filed his Response to the Court's Order on July 5, 2007, and Garlick filed his Response to the respondent's filing on July 17, 2007.

## B. **Grounds Alleged**

Garlick asserts the following entitle him to relief under 28 U.S.C. § 2254:

(a)   the Department of Corrections miscalculated his sentence term when it failed to grant him good conduct allowances for his first nine months served in city and regional jails before he was received in the state system, in violation of his rights to equal protection and due process under the Fourteenth Amendment; and,

(b)   the Department of Corrections deprived him of his Fourteenth Amendment right to equal protection and due process when it amended his release date from August 2006 to June 2008 without disciplinary or court action.

## II. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In order for this Court to address the merits of this habeas petition, all of petitioner's claims must be exhausted.  See 28 U.S.C. § 2254(b) (2000).  The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428,

1436 (E.D.Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993).  Exhaustion may be accomplished either

on direct appeal or in post-conviction proceedings.  See O'Sullivan v. Boerckel, 526 U.S. 838, 844

(1999) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also  Skipper v. French, 130 F.3d 603,

610 n.4 (4th Cir. 1997). Garlick's petition to the Virginia Supreme Court for a writ of habeas corpus

contained the same claims raised in the present petition; therefore Garlick's Grounds (a) and (b) meet

the exhaustion requirement.

Garlick previously asserted Grounds (a) and (b) to the Virginia Supreme Court in his state

habeas petition.  Pursuant to Title 28 of U.S.C. § 2254, a federal court may not grant relief on any

claim that the Virginia Supreme Court adjudicated on the merits[1] unless the Virginia Supreme Court's

adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> established by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State Court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained that this statute "plainly sought to ensure a level of

'deference to the determinations of state courts,' provided those determinations did not conflict with

federal law or apply federal law in an unreasonable way."  Williams v. Taylor, 529 U.S. 362 (2000).

Consequently, "state-court judgments must be upheld unless, after the closest examination of the

---

[1]The Virginia Supreme Court does not have to set forth findings of fact and conclusions of
law in its disposition of a claim for the claim to be "adjudicated on the merits." Wright v.
Angelone, 151 F.3d 151, 156-57 (4th Cir.1998).

state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 1511.

The Virginia Supreme Court, on March 2, 2006, decided Garlick's petition for habeas corpus was frivolous. Because the Virginia Supreme Court summarily rejected Garlick's petition, this Court will conduct an independent review of the applicable law to determine whether Garlick has made the requisite demonstration under 28 U.S.C. § 2254(d)(1)-(2). Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). This independent review is limited to determining "whether the state court's adjudication of the claims before it was a reasonable one in light of the controlling Supreme Court law." Bell v. Jarvis, 236 F.3d at 162.

### A. Ground (a)

In Ground (a), Garlick argues that his Fourteenth Amendment rights to equal protection and due process were denied when the Virginia Department of Corrections failed to credit him, in accordance with section 53.1-202 of the Virginia Code, with good conduct allowance credits he earned while he was confined awaiting transfer to a State correctional facility. He asserts that the Department's failure to credit him with good conduct allowance credits for the time he served between sentencing and actually being received in the State system results in his serving time in excess of his sentence. Garlick was sentenced on October 10, 2002, but was not received in the State system until 252 days later, on June 19, 2003. He served those 252 days, for which he received time served credit, in city and regional jails. (Pet. Ex. A.) Garlick claims that his Fourteenth Amendment right to equal protection was violated because, during his time served in city and regional jails, he was denied the opportunity to earn good conduct allowance credits, to which he has a statutorily-created right, while other prisoners being held pending transfer to state facilities were allowed to accrue good

conduct allowance credits.

For the purposes of good conduct allowance credits, an inmate whose sentence for a felony or misdemeanor conviction began on or after July 1, 1981, is governed by Chapter 6, Article 3, Title 53.1 of the Virginia Code.  <u>See</u> Va. Code § 53.1-199.  An inmate who committed the felony offense for which he is sentenced on or after January 1, 1995, earns sentence credits in accordance with Article 4.  <u>See</u> Va. Code § 53.1-202.2.  Garlick's current sentence is derived from suspended sentences from three felonies and one misdemeanor.  Because all of the felony sentences began after July 1, 1981, but prior to January 1, 1995, Garlick has a statutorily created right to earn good conduct allowances in accordance with sections 53.1-199 and 53.1-202 of the Virginia Code with respect to the felony convictions.  Sections 53.1-199 and 53.1-202 are also applicable to Garlick's ability to earn good conduct allowances for the sentence resulting from his 2002 misdemeanor driving under the influence conviction.

Section 53.1-202 provides prisoners detained in a city or regional facility while awaiting reception into a State facility the capability to earn good conduct allowance credits against their sentence.  Section 53.1-202 provides that

> [u]pon receipt by the Department, persons who have been confined while awaiting transfer to a state correctional facility shall be credited with such time as is certified to the Department in accordance with §§ 53.1-116 and 53.1-129 and as is otherwise provided by law.  Certified good conduct allowance shall be applied to reduce the person's maximum term of confinement, and one-half such credit shall be applied to reduce the period of time the person shall serve before being eligible for parole.

Under section 53.1-116, which is incorporated by reference into section 53.1-202, "[p]risoners eligible for parol under §§ 53.1-151, 53.1-152 or § 53.1-153 shall earn good conduct

credit at a rate of 15 days for each 30 days served with satisfactory conduct" while in a jail awaiting reception into a State facility. Additionally, "[t]he jailer may grant the prisoner additional credits for performance of institutional work assignments, participation in classes, or participation in local work force programs, if available at the facility, at a rate of five days for every 30 days served." Va. Code § 53.1-116(A).

## 1. **Equal Protection Claim**

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). Therefore, Garlick "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Id. (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Because "[p]risoners are not a suspect class," and "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis of classification," Garlick must demonstrate that the unequal treatment to which he was subjected is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989).

Garlick has not established that he has been treated differently from other prisoners with whom he is similarly situated. See Veney, 293 F.3d at 730. The respondent has repeatedly asserted that Garlick's good conduct allowance credits earned while serving his sentence in jail until he was received into a State facility were factored into his projected release date. The truth behind Respondent's assertion is made abundantly clear by Wendy K. Brown's affidavit, in which she

provided the Court a detailed, thorough explanation of Garlick's sentence computation. (Resp. Ex. F, Affidavit of Wendy K. Brown.)  According to this computation, the 126 days of good conduct allowance credits Garlick earned during his 252 days serving in local jails were credited to reduce his total sentence. (Id. at ¶ 8.)  Therefore, Garlick has not been subjected to unequal treatment, and cannot support a claim under the Equal Protection Clause of the Fourteenth Amendment.

## 2. Due Process Claim

In order to prevail on his due process claim, Garlick must prove that the Department of Corrections deprived him of a liberty interest.  See Hewitt v. Helms, 459 U.S. 460, 465 (1983).  If it did, the Court "must then decide whether the process afforded [him] satisfied the minimum requirements of the Due Process Clause."  Id. at 472.

It is well-settled that "'the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.'"  Id. at 467 (citing Wolff v. McDonnel, 418 U.S. 539, 557 (1974)).  However, "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources - the Due Process Clause itself and the laws of the States."  Id. at 466 (citation omitted).  A state "may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures."  Id. at 470.  The Supreme Court recognizes, for example, that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." Id. at 472.

The statutes that govern good conduct allowance credits and sentence credits, Virginia Code

7

sections 53.1-199, 53.1-200, 53.1-201, and 53.1-202, are framed in mandatory language.[2]  See Brown-El v. Virginia Parole Board, 948 F. Supp. 558, 560 (E.D. Va. 1996).  It follows that Garlick, who is serving a sentence subject to this statute, has a liberty interest in the opportunity to earn good conduct allowance credits while incarcerated.[3]  See id.  Because Garlick was awarded his good conduct allowance credits, the State has not deprived his liberty interest in earning them.  Therefore, Garlick was not deprived his right to due process and the Court recommends denying Ground (a).

## B.  Ground (b)

In Ground (b), Garlick claims that his Fourteenth Amendment rights to equal protection and due process were violated when his good conduct allowance earning classification was changed from Level 1 to Level 4, which simultaneously diminished his ability to earn good conduct allowances and extended his mandatory parole release date forward by twenty-two months.

Garlick's claim arises from the following facts.  Garlick was transferred to the Indian Creek Correctional Center on July 16, 2004, where he was placed into the Therapeutic Community ("TC")

---

[2]Section 53.1-199 states that "good conduct allowances shall be applied to reduce the person's maximum term of confinement while he is confined in any state correctional facility. One-half of the credit allowed under the provisions of § 53.1-201 shall be applied to reduce the period of time a person shall serve before being eligible for parole."

Section 53.1-200 states that "[r]egulations approved by the Board shall govern the earning of good conduct allowance.  The regulations shall require, as a condition for earning the allowance, that a prisoner participate in an appropriate . . . program . . . as provided in § 53.1-32.1.  The amount of good conduct allowance to be credited to those persons eligible therefor shall be based upon compliance with written prison rules or regulations; . . . ."

Section 533.1-201 states that "[g]ood conduct allowances shall be based upon a four-level classification system . . . .  Persons may be reclassified for an increase or decrease in class according to rules and regulations established pursuant to § 53.1-200."

[3]Importantly, Virginia Code sections 53.1-198 through 202 do not create a liberty interest in being placed in any particular good conduct allowance class or in earning any particular number of credits.  Ewell v. Murray, 813 F. Supp. 1180, 1183 (W.D. Va. 1993).

8

program due to his past history of substance abuse. (Resp. Ex. E, Affidavit of Carolyn M. Parker.)

TC program participants earn good conduct allowance credits as part of Class 1 under section 53.1-

201 of the Virginia Code.  Members of Class 1 earn good conduct allowance credits "at a rate of

thirty days credit for each thirty days served."  Va. Code § 53.1-201.   In accordance with prison

rules, before enrolling in the TC program, Garlick participated in an Institutional Classification

Authority ("ICA") Hearing during which his programming needs were assessed. (Resp. Ex. D,

Affidavit of Felicia M. Smith.)  Additionally, during the hearing  he was made aware that refusal to

participate in the program could result in a Class Level change in accordance with section 53.1-32.[4]

(Resp. Ex. D, Affidavit of Felicia M. Smith, Enclosure A.)  Garlick was also provided a copy of the

ICA Hearing form, which provides a written warning of the consequences for refusing to participate

in the program.  (Id.)

Sometime prior to November 18, 2004, Garlick refused to continue participating in the TC

program.[5]   On November 18, 2004, his Class Level was changed from Level 1 to Level 4, at which

a prisoner earns good conduct allowances "at a rate of no credit for each thirty days served."  Va.

Code § 53.1-201.  Garlick was officially notified of his changed Class Level through a new Legal

Update[6] generated on March 29, 2005. (Id.)  The new Legal Update reflected the change in Garlick's

---

[4]Va. Code § 53.1-32.1 provides that "[n]otwithstanding any other provision of law, prisoners refusing to accept a program assignment shall not be eligible for good conduct allowances or earned sentence credits authorized pursuant to Chapter 6 (§ 53.1-186 et. seq.) of Title 53.1."

[5]On a Grievance Form completed by Garlick on August 25, 2004, he specifically requests release from the TC program. (Pet. Attachment I-1 to State Writ.)

[6]A new legal update is generated any time an event occurs that impacts the service of the total sentence, including events such as class level changes, loss of good time as the result of the inmate's misbehavior, breaks in confinement or additional or amended sentences. (Resp. Ex. D,

9

Class Level and the recalculation of his projected mandatory parole release date.  According to statements contained in the affidavit of Felicia M. Smith, Manager for the Court and Legal Service Section of the Virginia Department of Corrections, at the time of Garlick's Class Level change, "it was this office's standard procedure to forward legal updates to the inmate's location for distribution. This legal update was a notification to Garlick that his Class Level had changed from a Level 1 to a Level 4." (Resp. Ex. D.)   On April 4, 2005, Garlick filed an Informal Complaint Form in the Greensville Correctional Center, where he had been transferred, in which he challenged his new mandatory parole release date and alleged he had been deprived of twenty months worth of good conduct allowances. (Pet. Attachment C-5 to State Writ.)  Lieutenant Boon responded to Garlick's complaint on April 11, 2005, explaining that the change in his mandatory parole release date reflects his Class Level change for refusing to further participate in the TC program. (Id.)

### 1. Equal Protection Claim

With regard to his equal protection claim, Garlick has not alleged that he has been treated differently from others with whom he was similarly situated - members of the Indian Creek Correctional Center who refused to participate in the TC program.  Accordingly,  his claim fails.  See Morrison v. Garraghty, 293 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.")

### 2. Due Process Claim

Having already established that Garlick has a state-created liberty interest in the opportunity

---

Affidavit of Felicia M. Smith.)

to earn good conduct allowance credits and sentence credits, the Court must next determine whether the process afforded Garlick - notification of his change in Class Level through his new Legal Update, the opportunity for him to respond through the informal complaint form, and the Lieutenant's written response to Garlick's informal complaint - satisfied the minimum requirements of the due process clause.

"The requirements imposed by the [Due Process] Clause are, of course, flexible and variable dependent upon the particular situation being examined." Hewitt, 459 U.S. at 472.  State-created rights, such as the right to earn good conduct allowances toward early release from prison, are conditioned "upon the observance of certain standards of behavior while under the close supervision of state law enforcement authorities.  Revocation of . . . or denial of good time 'deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions.'" Durkin v. Davis, 390 F. Supp. 249, 255 (E.D. Va. 1975) (quoting Morissey v. Brewer, 408 U.S. 471, 480 (1972)).  Whenever termination of a liberty that is dependent upon compliance with certain conditions will inflict "grievous loss," "some orderly process, however informal," is necessary.  See id. (internal quotations and citations omitted).

In Ewell v. Murray, the court decided that the process owed a prisoner who was placed in good conduct allowance Class 4 for failure to comply with one of the three areas of performance cited in section 53.1-200, which resulted in the inability to earn good conduct allowances,  included "only an informal, nonadversarial review, including the inmate's statement, within a reasonable time after the fact.  This informal procedure requires only notice to the inmate and an opportunity for the inmate to present his views, either orally or in writing." 813 F. Supp. 1180, 1183 (W.D. Va. 1993)

11

(citing Hewitt, 459 U.S. at 472, 476).

Applying the standards established in Durkin and Ewell, the Court finds that Garlick was afforded sufficient due process when the State placed him in good conduct allowance Class 4. First, Garlick was notified from the outset that his refusal to participate in the TC program would result in re-classification under the good conduct allowance system to Class 4 and forfeiture of his right to earn good conduct allowance credits. Garlick was also notified, through his new Legal Update, that he was transferred to Class 4 and that his mandatory parole release date was altered to reflect his new good conduct allowance earning level. Garlick had opportunity to present his views in writing, through the Informal Complaint Form. Therefore, he was afforded the process owed him under the due process clause. See id. Accordingly, the Court recommends denying Garlick's Ground (b).

## III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Garlick's petition for writ of habeas corpus be DENIED the respondent's motion to dismiss be GRANTED.

Garlick's Ground (a) should be DENIED. Garlick's equal protection claim raised under Ground (a) should be denied because he did not prove that he was subjected to disparate treatment as a result of intentional or purposeful discrimination. To the extent that Ground (a) alleges a violation of Garlick's Fourteenth Amendment right to due process, it should be DENIED because his state-created right to have the opportunity to earn good conduct allowance credits was not deprived.

Garlick's Ground (b) should be DENIED. To the extent he claimed his Fourteenth Amendment right to equal protection was violated, Garlick's claim should be denied because he has

12

not alleged that he has been treated differently than others with whom he is similarly situated.  To the extent he claims his Fourteenth Amendment right to due process was denied, the claim should be denied because he was afforded the process to which he was entitled.

Garlick has failed to demonstrate "a substantial showing of the denial of a constitutional right," therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the  Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of right to appeal from a judgment of this

court based upon such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr

v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


_____/s/_____
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 1, 2007

14

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Norman H. Garlick, # 321732
Keen Mountain Correctional Center
PO Box 860
Oakwood, VA 24631

Banci Enga Tewolde, Esq.
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

Fernando Galindo, Clerk

By _____
Deputy Clerk

August    , 2007

15